Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

KARACHI BAKERY INDIA,

       *Plaintiff,*

    v.

DECCAN FOODS LLC, KIRAN KUMAR
POLA, individually and on behalf of Deccan
Foods LLC, and MANOJ RAMNANI

       *Defendants.*

Civil Action No. 19-5600 (JMV)

**OPINION**

### John Michael Vazquez, U.S.D.J.

This case concerns an alleged improper trademark registration and a subsequent assignment of the trademark. Currently pending before the Court is the renewed motion to dismiss Plaintiff's First Amended Complaint by Defendant Deccan Foods, LLC ("Deccan Foods") and Kiran Kumar Pola ("Pola") (collectively, the "Deccan Defendants"). D.E. 64. Plaintiff Karachi Bakery India ("Plaintiff") filed a brief in opposition, D.E. 69, to which the Deccan Defendants replied, D.E. 70. The Court reviewed the submissions in support and in opposition,[1] and

---

[1] Plaintiff's First Amended Complaint will be referred to hereinafter as "FAC" (D.E. 35); Deccan Defendants' brief in support of its motion to dismiss the complaint will be referred to hereinafter as "Deccan Def. Br." (D.E. 66); Plaintiff's brief in opposition to Deccan Defendants' motion to dismiss the complaint will be referred to hereinafter as "Pl. Opp. Br." (D.E. 69); Deccan Defendants' reply brief will be referred to hereinafter as "Deccan Def. Reply." (D.E. 70).

The Court notes that Plaintiff filed two separate briefs in opposition, entered as D.E. 68 and D.E. 69. These briefs appear to be identical and the Court will consider the most recent submission (D.E. 69).

considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motion to dismiss Counts I, II, and III is **DENIED** and Defendants' motion to dismiss Counts IV, V, VI and VII is **GRANTED**.

## I. FACTUAL BACKGROUND[2]

This dispute arises from a trademark registered by the Deccan Defendants and subsequently transferred to Defendant Manoj Ramnani ("Ramnani"). Plaintiff alleges that is has been using the name "Karachi Bakery" internationally since 1953 and in the United States since 2007. Plaintiff further alleges that in 2012 and 2013, the Deccan Defendants unlawfully applied for and registered the "Karachi Bakery" word mark using Plaintiff's packaging label. The Deccan Defendants then transferred the trademark to Defendant Ramnani.

Plaintiff is a partnership organized under the laws of India and its principal place of business is in Banjara Hills, Hyderabad, India. FAC at ¶ 6. Deccan Foods is an Arizona limited liability company with its principal place of business in Phoenix. *Id.* at ¶ 8. Pola is a resident of India and lives in Phoenix. *Id.* at ¶ 10. Pola is a majority owner of Deccan Foods as well as Deccan Grainz Private Limited ("Deccan Grainz"). *Id.* at ¶ 10. Ramnani is a citizen and resident of India. *Id.* at ¶ 14. Defendant Ramnani is also a minority partner in Plaintiff. *Id.* at ¶ 15.

Plaintiff claims that it has been producing and selling baked goods in India under the Karachi Bakery mark since 1953. *Id.* at ¶ 18. In 2004, one of Plaintiff's partners and representatives submitted a trademark application for "Karachi Bakery" to India's Trademark Registry. *Id.* at ¶ 19. In 2009, Plaintiff received a certificate of registration for the mark. *Id.* at ¶

---

[2] The factual background is taken from the First Amended Complaint, D.E. 69. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Following the first motion to dismiss, the Court permitted the parties to take limited jurisdictional discovery. To the extent relevant, the discovery is also referenced herein.

2

20. Plaintiff has submitted fifteen additional trademarks for "Karachi Bakery" that have been approved, but not formally registered, by India's Trade Marks Registry, *id.* at ¶ 21, and also has nine additional trademark applications pending, *id.* at ¶ 22. Plaintiff has a registration in the United Kingdom for the "Karachi Bakery" mark and has pending applications in a number of other countries. *Id.* at ¶ 23.

Plaintiff claims that in at least as early as 2007, it began to export baked goods with the Karachi Bakery mark into the United States through Karachi Corporation and Sai Baba, Inc. *Id.* at ¶ 24. Karachi Corporation is Plaintiff's wholesale and trading division, while Sai Baba is Plaintiff's manufacturing division. *Id.* Plaintiff states that beginning at least as early as November 2009 through late 2012, Plaintiff exported its Karachi Bakery goods into the United States using a number of third-party importers. *Id.* at ¶ 25. Since least as early as December 2012 until the present, Plaintiff indicates that it exported and sold its Karachi Bakery goods into the United States using Sairam NJ. Sairam's principal place of business in Iselin, New Jersey. *Id.* at ¶ 26.

Beginning on September 6, 2012, Plaintiff sold Karachi Bakery brand goods to Deccan Grainz in India. *Id.* at ¶ 27. Plaintiff claims that at approximately the same time, Defendant Pola began importing these goods into the United States from Deccan Grainz to Deccan Foods. *Id.* at ¶¶ 27, 31. Plaintiff continues that these goods were packaged with Plaintiff's Karachi Bakery mark and that neither Defendant Deccan Foods, Defendant Pola, nor Deccan Grainz had an exclusive right to sell Plaintiff's products under the mark. *Id.* at ¶¶ 28-29.

Plaintiff asserts that on July 31, 2012, the Deccan Defendants filed an application ("Application") in the name of Pola and Deccan Foods with the United States Patent and Trademark Office ("USPTO") to register the word mark "Karachi Bakery." *Id.* at ¶ 30. According to Plaintiff, the Application identified "Biscuits; Cakes; Chocolate; Sweets" as the goods relating

3

to mark. *Id.* Plaintiff alleges that the Deccan Defendants submitted copies of Plaintiff's packaging label as proof of the Deccan Defendants' use of the mark in commerce. *Id.* at ¶ 33. Pola declared in the Application that "to the best of his [] knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce[.]" *Id.* at ¶ 37. Plaintiff contends that this declaration was false. Plaintiff explains that the Deccan Defendants knew that neither Pola nor Deccan Foods were the rightful owners of the Karachi Bakery mark, *id.* at ¶ 35, and that Plaintiff was entitled to use the mark, *id.* at ¶ 36.

The USPTO approved the Application. On May 7, 2013, the Karachi Bakery mark was registered on behalf of the Deccan Defendants as U.S. Registration No. 4,331,059. *Id.* at ¶ 38.

In May 2014, Plaintiff first became aware of the registered mark and Application when the Deccan Defendants' counsel sent Plaintiff's authorized U.S. importer, Sairam, a "cease and desist" letter. *Id.* at ¶ 39. Plaintiff thereafter stopped supplying Deccan Foods and Pola with Plaintiff's goods. *Id.* at ¶ 43.

On February 25, 2015, the Deccan Defendants executed a document purported to transfer the Karachi Bakery mark, including its U.S. Registration, to Defendant Ramnani. *Id.* at ¶ 44. The trademark assignment was recorded with the USPTO on March 31, 2015, *id.* at ¶ 46, and on April 15, 2015, the Deccan Defendants notified Plaintiff of the assignment, *id.* at ¶ 49. After the assignment, Plaintiff alleges that Ramnani began supplying the Deccan Defendants with goods with Plaintiff's mark. *Id.* at ¶ 47.

## II. PROCEDURAL HISTORY

On September 9, 2014, Plaintiff filed a Complaint against the Deccan Defendants. D.E. 1. On January 7, 2015, the Deccan Defendants submitted an Answer. D.E. 10. As noted, shortly thereafter, the Deccan Defendants assigned the mark to Defendant Ramnani. On December 23,

2015, Plaintiff filed its First Amended Complaint ("FAC") also naming Ramnani as a defendant and adding two additional claims. D.E. 35. Thereafter, the Deccan Defendants filed a motion to dismiss. On April 6, 2016, the Court denied the motion without prejudice and ordered limited jurisdictional discovery concerning the assignment of the trademark from the Deccan Defendants to Defendant Ramnani. D.E. 49. Following the discovery, the Deccan Defendants renewed their motion to dismiss pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure. D.E. 64.

### III. LEGAL STANDARD

Rule 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). A court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do

5

not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

Under Rule 12(c), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "The pleadings are 'closed' after the complaint and answer are filed, along with any reply to additional claims asserted in the answer. *Horizon Healthcare Servs., Inc. v. Allied Nat. Inc.*, 2007 WL 1101435, at *3 (D.N.J. Apr. 10, 2007). "Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Bayer Chemicals Corp. v. Albermarle Corp.*, 171 Fed. Appx. 392, 397 (3d Cir. Mar. 21, 2006) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir.1988) (internal citations and quotations omitted)).

"In reviewing a decision granting a Rule 12(c) motion, [a court] must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Szczurek v. Prof'l Mgmt. Inc.*, 627 F. App'x 57, 60 (3d Cir. 2015) (internal citations and quotations omitted); *see Muhammad v. Sarkos*, 2014 WL 4418059, at *1 (D.N.J. Sept. 8, 2014) ("Where a defendant's motion is one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), it is treated under the same standards as a Rule 12(b)(6) motion where it alleges that a plaintiff has failed to state a claim.").

Although the Deccan Defendants cited to both Rule 12(b)(6) and 12(c), it appears that their motion is actually based on Rule 12(b)(1) for lack of subject matter jurisdiction regarding the first three counts. In deciding a Rule 12(b)(1) motion, a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed. A facial attack "contests the sufficiency of the complaint because of a defect on its face," whereas

6

a factual attack "asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites." *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (quoting *Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 806 (E.D.Pa. 2015)). "In reviewing a factual attack, the court may consider evidence outside the pleadings." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). The Deccan Defendants argue that Counts I-III should be dismissed because there is no longer a "case or controversy" in light of the Deccan Defendants assignment to Ramnani. Deccan Def. Br. at 10-13. The Deccan Defendants argue that because there is no "case or controversy," therefore Plaintiff fails to state a claim upon which relief can be granted under Rule 12(b)(6). However, given the Deccan Defendants argument, they are in effect arguing that the Court lacks subject matter jurisdiction over Plaintiff's claims under Rule 12(b)(1). The Court will consider the Deccan Defendants' arguments under Rule 12(b)(1) because Plaintiff responded substantively to the motion and did not object. Similarly, given that jurisdictional discovery has been taken, and the Plaintiff has not objected, the Court will consider the Deccan Defendant's motion as a factual attack. The Court, moreover, has an independent obligation to establish that it has subject matter jurisdiction. *Morel v. INS*, 144 F.3d 248, 251 (3d Cir. 1998) ("[A federal] court . . . will raise lack of subject-matter jurisdiction on its own motion.") (quoting *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).

## IV. ANALYSIS

At the outset, a Rule 12(c) motion does not appear appropriate at this time because the Deccan Defendants have not answered the First Amended Complaint. Indeed, the Deccan

7

Defendants filed a motion to dismiss in lieu of answering. Thus, the pleadings are not closed, and the Court denies any relief pursuant to Rule 12(c).

### a. Counts I-III

Plaintiff's first three counts allege that the Deccan Defendants violated multiple sections of the Lanham Act when they registered the Karachi Bakery mark with the USPTO. In its first cause of action ("Count I"), Plaintiff requests declaratory relief canceling the trademark because the registration should have been refused pursuant to 15 U.S.C. § 1052(d). FAC at ¶¶ 53-67. Plaintiff's second cause of action ("Count II") requests declaratory relief canceling the trademark because the mark was not registered by "the owner of a trademark" under 15 U.S.C. § 1051(a). FAC at ¶¶ 68-77. Plaintiff's third cause of action ("Count III") requests declaratory relief cancelling the trademark under 15 U.S.C. § 1064 because it was obtained fraudulently. FAC at ¶¶ 78-84.

As noted, the Court denied without prejudice the Deccan Defendants' first motion to dismiss and ordered limited jurisdictional discovery on the issue of whether the assignment from the Deccan Defendants to Defendant Ramnani was "an arms-length transaction for good and valuable consideration, or whether it was the result of impropriety or collusion," because the Court did not "have a sufficient factual record to determine" the issue. D.E. 49. After considering the additional information, the Court again denies the Deccan Defendants' motion.

Courts have granted motions to dismiss based on the lack of a present "case or controversy" after a patent was assigned by a defendant to non-party.[3] *E.J. Breneman, LP v. Rd. Sci. LLC*, 2012

---

[3] Summary judgment has also been granted based on a lack of "case or controversy" after an assignment. *See Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1034 (C.D. Cal. 2011) (granting summary judgment based on a lack of "case or controversy" after a valid assignment of a trademarks), aff'd, 738 F.3d 1085 (9th Cir. 2013).

WL 406346, at \*5 (E.D.Pa. Feb. 9, 2012); *Trend Micro Corp. v. Whitecell Software, Inc.*, 2011 WL 499951, at \*5 (N.D.Cal. Feb.8, 2011) (*Trend II*). In order to find a valid assignment, the assignment must be "a negotiated, arms-length transaction made for good and valuable consideration; and that the sale was not made for the purpose of avoiding the jurisdiction of [the] Court." *E.J. Breneman, LP*, 2012 WL 406346, at \*5; *see also Trend II*, 2011 WL 499951, at \*5 (granting a motion to dismiss because the court found an assignment was not a "collusive ploy to skirt jurisdiction").

The Declaratory Judgment Act ("DJA")[4] requires an "actual controversy," and provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In determining whether a suit under the DJA passes constitutional muster under Article III of the United States Constitution, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citations omitted).[5] "The dispute must be

---

[4] The FAC pleads that "Plaintiff has standing to bring this Declaratory Judgment action seeking cancelation of Deccan LLC's trademark registration pursuant to the Lanham Act, (15 USC ᵃ³³ §1064 & 1119) *and Declaratory Judgment Act, (28 USC §2201(a))*, because Plaintiff owns the mark "Karachi Bakery," has for more than sixty (60) years sold baked goods under the "Karachi Bakery" mark, has used the mark in commerce in the United States since 2007, and continues to use the subject mark." FAC at ¶ 59 (emphasis added).

[5] In *MedImmune*, the Supreme Court changed the Federal Circuit's more demanding standard that required a "reasonable apprehension of imminent suit" for there to be a present case or controversy under Article III. *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1348 (Fed. Cir. 2011) ("*MedImmune* rejected our prior, more stringent standard insofar as it included a requirement of a 'reasonable apprehension of imminent suit.'"). Here, the Deccan Defendants do

'definite and concrete, touching the legal relations of parties having adverse legal interests,' such that the dispute is 'real and substantial' and 'admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" Powertech Tech. Inc. v. Tessera, Inc., 660 F.3d 1301, 1306 (Fed. Cir. 2011) (quoting *MedImmune*, 549 U.S. at 127).

"Jurisdiction over a declaratory judgment action must be present 'at all stages of review, not merely at the time the complaint is filed.'" *Janssen Pharmaceutica, N.V. v. Apotex*, Inc., 540 F.3d 1353, 1360 (Fed.Cir. 2008) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n. 10 (1974)). "If, however, an actual controversy existed at the time the complaint was filed, jurisdiction is presumed to continue throughout the proceedings unless evidence is presented to challenge it." *Trend Micro Corp.*, 2011 WL 499951, at *3 (N.D. Cal. Feb. 8, 2011) ("*Trend II*") (citing *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993)). "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007). "Further, once that burden has been met, absent further information, that jurisdiction continues. . . . The burden of bringing forth such further information may logically rest with the party challenging jurisdiction . . . but the actual burden of proof remains with the party seeking to invoke jurisdiction." *Benitec Australia, Ltd.*, 495 F.3d at 1344–45 (internal citations omitted).

The Court finds that Plaintiff has met its burden regarding the existence of a "case or controversy" because Plaintiff has presented adequate evidence that the assignment was not the

---

not argue that even if the assignment was the product of a collusive effort to avoid this Court's jurisdiction, there would be no present case or controversy.

result of an arms-length transaction for valuable consideration. The Deccan Defendants claim that the valid consideration received in exchange for the assignment was the exclusive distribution rights in the United States. However, Plaintiff points to sufficient evidence of collusion and to defeat the Deccan Defendants' motion to dismiss.

By way of background, soon after Deccan Foods began importing Karachi Bakery goods into the United States in 2012, Pola sought an exclusive distributorship. D.E. 66, MacGregor Decl., Ex. B, at p. 54-57 (hereinafter "Pola Dep."). Plaintiff declined. Pola Dep. at p. 56-57. Thereafter, owners of Plaintiff and Ramnani became involved in a family dispute in India over Karachi Bakery goods. D.E. 66, MacGregor Decl., Ex. C, at p. 78-80 (hereinafter "Ramnani Dep."). A reasonable inference from the evidence is that Pola became aware of the dispute and looked to capitalize. Pola and Deccan Foods applied for the registered trademark, using Plaintiff's packaging as evidence no less. FAC at ¶¶ 33-37. As Plaintiff correctly notes, if the registered trademark was valid, then the Deccan Defendants had the exclusive right to use it in the United States. *See* Pl. Opp. Br. at 13. Then, Deccan Foods sent the cease and desist letter to Sairam, Plaintiff's New Jersey importer, on May 9, 2014. D.E. 46-3 (May 9, 2014 Letter). The letter was written by the Deccan Defendants' current counsel. The letter, in part, stated as follows:

> We represent Deccan Foods LLC ("Deccan"), the owner of the KARACHI BAKERY name and trademark (the "KARACHI Mark"). We are writing regarding your unauthorized use of the KARACHI Mark.
>
> Deccan is the owner of the KARACHI Mark in connection with bakery products in the United States and owns a federal trademark registration for the KARACHI Mark, Registration No. 4,331,059, in the United States Patent and Trademark Office for biscuits, cakes, chocolate and sweets. *Deccan has expended large sums of money and a great deal of effort building its business and promoting its good under the KARACHI Mark, and, as a result, the KARACHI Mark has come to be associated with Deccan and represents a valuable asset to our client.*

11

> It has come to our clients' attention that your company is importing and selling bread, biscuits and related bakery products bearing the KARACHI BAKERY mark on their packaging[.] . . .
>
> The importation, distribution and sale of these products constitute counterfeiting, trademark infringement and unfair competition under the Lanham Trademark Act . . . and subject your company to the full range of remedies available under those laws, *including preliminary and permanent injunctive relief, an award of up to three times your company's profits and/or our client's actual damages flowing from your company's unlawful acts or statutory damages in an amount up to $200,000, and reasonable attorney's fees.*
>
> We would like to try and resolve this matter amicably in a way that satisfies both parties. According, we request that you contact the undersigned no later than *May 23, 2014* to discuss this matter. *If we do not hear from you by that date, we will advise our client to take appropriate action, which may include, without limitation, the seizure of your company's goods by U.S. Customs.*

*Id. (first, second, and fourth emphases added).*

As to the claim that Deccan that Karachi Bakery goods had become associated with Deccan, Deccan had been importing the goods for less than two years, since approximately September 2012, when the letter was sent. Plaintiff had already been exporting its goods into the United States since 2009. Significantly, the Deccan Defendants knew that Plaintiff was using other distributors in the United States; indeed, Pola candidly admitted in his deposition that he only wanted exclusive distribution rights, which Plaintiff had refused. The letter, moreover, sets forth considerable monetary penalties and even indicates that the goods could be seized by United States Customs. The evidence reflects that Plaintiff was not aware that the Deccan Defendants obtained the Karachi Bakery mark until the cease and desist letter was sent.

Once Plaintiff caught wind of the Deccan Defendants' actions, it filed the current suit. In response, the Deccan Defendants attempted to wash their hands of the situation they created by

12

assigning the trademark to Ramnani. Significantly, there is no evidence that the Deccan Defendants had been negotiating the assignment with Ramnani before the suit was filed. *Cf. Trend II*, 2011 WL 499951, at *4 (noting, as a factor in finding a valid assignment, that negotiations had first started a year before consummation and before the underlying lawsuit was filed). In fact, during his deposition, Pola unconvincingly testified that he could not recall how the discussions with Ramnani came about in the first place. Pola Dep. at p. 63 (in response to the question, "How did the idea of transferring that trademark registration come about?", Pola responded in part, "So [Ramnani] might ask me or I told him, I don't remember, but that happened. My main concern is exclusive rights."). Moreover, there is no evidence that the Deccan Defendants had prior business dealings with Ramnani.

Critically, because Ramnani is in India and does not have a United States presence, the Deccan Defendants' current counsel[6] registered as the agent for Ramnani with the USPTO. D.E. 46-8 (Trademark Assignment Cover Sheet). Thus, for a certain period, the Deccan Defendants' counsel was representing them in the current lawsuit while at the same time serving as the registered agent for Ramnani. Then, counsel filed an amendment, indicating that she was no longer the agent for Ramnani in the United States, thereby hampering Plaintiff's ability to serve Ramnani in the United States. D.E. 46-8 (Trademark Assignment Cover Sheet).

Moreover, the assignment to Ramnani was not accompanied, at first, by the exclusive distribution rights. Pl. Opp. Br, Ex. 2 (Confirmatory Trademark Assignment). Instead, the complete agreement was entered into approximately a month after the initial assignment, with the Deccan Defendants obtaining what it had been seeking for years, that is, the exclusive distribution

---

[6] Plaintiff has not raised the issue of whether the Deccan Defendants' current counsel is a potential fact witness in this matter, and the Court declines to do so *sua sponte*.

13

rights in the United States. Pola Dep. at p. 92-94. Yet, as Plaintiff points out, once the Deccan Defendants received the registered trademark, they already had the exclusive right to use the mark in the United States. *See* Pl. Opp. Br. at 13. Moreover, as Plaintiff also correctly notes, the Deccan Defendants did not perform an independent evaluation to determine the worth of the Karachi Bakery mark before entering into the assignment. Pola Dep. at p. 83-84. Finally, and importantly, the Deccan Defendants merely indicate that Ramnani has the ability to export Karachi Bakery goods into the United States. However, there is no evidence that Ramnani has the authority give an exclusive distributorship. Without this authority, the stated consideration for the assignment is simply not accurate.

At this stage, the evidence produced pursuant to the jurisdictional discovery sufficiently demonstrates collusion by the Deccan Defendants and Ramnani to avoid this Court's jurisdiction. In other words, Plaintiff has adequately shown that the assignment was not the result of an arms-length transaction for valuable consideration. Thus, a justiciable case or controversy presently exists.

Therefore, the Deccan Defendants' motion to dismiss Counts I-III is denied.

**V.    Count IV**

Count IV requests damages from the Deccan Defendants pursuant to Section 38 of the Lanham Act, 15 U.S.C. § 1120,[7] as Plaintiff alleges that the registered trademark was obtained

---

[7] Section 38 of the Lanham Act (15 U.S.C. § 1120) provides, in relevant part:

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

14

through fraud pursuant to a scheme to harm Plaintiff's business in the United States. FAC at ¶¶ 85-93. The Deccan Defendants argue that Count IV should be dismissed because attorneys' fees are not recoverable under Section 38 and because Plaintiff fails to properly plead damages.

### i. Attorneys' Fees

The Deccan Defendants argue that attorneys' fees are not recoverable under Section 38 of the Lanham Act (15 U.S.C. § 1120). Deccan Def. Br. at 14-15. Plaintiff largely fails to respond to the Deccan Defendant's argument, except for arguing in a footnote that Deccan Defendants have failed to show that Plaintiff cannot "recover pre-litigation attorneys' fees." Pl. Opp. Br. at 18 n.11.

The parties did not cite any binding precedent in the Third Circuit (nor could the Court find any) and Defendant is correct that federal courts in other jurisdictions uniformly find that attorneys' fees are not recoverable under Section 38 of the Lanham Act. *See High Volatage Beverages, LLC v. Coca-Cola Co.*, 2011 WL 831523, at *6 (W.D.N.C. Mar. 3, 2011) (finding that "virtually every modern court has held that, as a matter of law, attorneys' fees do not qualify as recoverable 'damages' under Section 38 of the Lanham Act") (citing cases). Courts have held that allowing recovery for attorneys' fees under Section 38 of the Lanham Act would be inconsistent with the statutory scheme intended by Congress because Section 35 of the Lanham Act provides for the recovery of attorneys' fees (but only in "exceptional cases"). *See Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 876 (8th Cir. 1994) ("If an award of fees were required by Section 38, that requirement would deprive courts of the discretion to award fees under Section 35, which discretion is limited to exceptional cases. . . . The conclusion that fees are not included within damages awarded under Section 38 is, moreover, consonant with the more general tenor of the law

---

In this Opinion, the Court will hereinafter refer to 15 U.S.C. § 1120 as "Section 38" of Lanham Act and to 15 U.S.C. § 1117 as "Section 35" of the Lanham Act.

of trademark."). Plaintiff fails to support its argument that pre-litigation attorneys' fees are nonetheless recoverable under Section 38, and the Court has not found any case law supporting this assertion. In fact, courts are usually unequivocal in their finding that attorneys' fees are not recoverable under Section 35. *See, e.g., United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000) ([I]t is true [Section 38] does not allow for the award of attorney fees.").

Therefore, Plaintiff's claim for attorneys' fees under Section 38 fails as a matter of law.

### ii. Harm to Business Reputation

The Deccan Defendants argue that Plaintiff's only additional claim for injury is to its "business reputation," FAC at ¶ 92, and that this allegation fails to meet the particularity requirements of Rule 9(b) and therefore fails to state a claim under Section 38. Deccan Def. Br. at 15-16. Defendant states that the FAC does not provide any factual support for Plaintiff's claim of reputational harm. Deccan Def. Opp. at 16. Plaintiff argues in its opposition that because the Deccan Defendants sent a cease and desist letter to Plaintiff's authorized importer threatening injunctive action, monetary damages, and the seizure of goods with the Karachi Bakery mark, FAC at ¶ 39-42, sales of Plaintiff's goods were disrupted, Pl. Opp. at 17 (citing FAC at ¶¶ 39-42). Defendant replies that Plaintiff never explains how its goods were disrupted. Deccan Def. Reply at 6-7.

Rule 9(b) requires, in part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Because Plaintiff is alleging fraud under Section 38, Rule 9(b)'s pleading requirements apply to Plaintiff's claim. *See Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp. of Am.,* 158 F. Supp. 277, 279 (D.N.J. 1958) (applying Rule 9(b) to a fraud claim under Section 38). Courts have held that "a claim for fraudulent

16

registration under § 38, like any fraud claim, must comply with the heightened pleading standards of Fed.R.Civ.P. 9(b)." *GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F. Supp. 2d 234, 243 (S.D.N.Y. 2000); *Jaguar Land Rover Ltd. v. Bombardier Recreational Prod., Inc.*, 2017 WL 2472851, at *1 (E.D. Mich. June 8, 2017) ("Courts have found that the heightened pleading standard for fraud claims, Fed. R. Civ. P. 9(b), applies to claims for fraudulent registration of trademarks under 15 U.S.C. § 1120."); *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 334 n.30 (S.D.N.Y. 2015); *Aureflam Corp. v. Pho Hoa Phat I, Inc.*, 375 F. Supp. 2d 950, 954 (N.D. Cal. 2005). Courts have also held that 9(b)'s pleading standard applies to each element of a fraud claim – including damages. *GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F. Supp. 2d 234, 243 (S.D.N.Y. 2000) ("The heightened pleading requirements apply to each element of the fraud claim."); *Havana Club Holding, S.A. v. Galleon*, 1998 WL 150983, at *3 (S.D.N.Y. Mar. 31, 1998) (finding that "[i]n its current form [plaintiff's claim of lost sales damages under Section 38] does not meet even the pleading standards of Fed.R.Civ.P. 9(b)"). Here, Plaintiff does not challenge that it is required to plead damages in accordance with Rule 9(b).

Here, the alleged damage for harm to Plaintiff's "business reputation" is not sufficiently pled. Plaintiff does not provide enough particularity as to the circumstances surrounding its claim of reputational harm and the extent of the resulting damage to Plaintiff's business.[8]

### iii. Decreased Licensing Fees and Market Share

Plaintiff also argues in its opposition that sales by the Deccan Defendants under Plaintiff's Karachi Bakery Mark "deprives Plaintiff of license fees and market share to which Plaintiff . . .

---

[8] Plaintiff cites *Satander Consumer USA Inc. v. Walsh*, 762 F.Supp 2d 217 (D.Ma. 2010) in support of its argument that an allegation of injury to business reputation can support a claim for damages under Section 38. Pl. Opp. at 17. However, in *Satander*, in evaluating the party's Rule 12(c) motion, the court did not explicitly apply Rule 9(b)'s heightened pleading standard.

17

would be entitled." Pl. Opp. at 18. (citing FAC at ¶ 43). Paragraph 47 of the FAC states: "Upon information and belief, [D]efendant Ramnani, without authorization from Plaintiff, began supplying [Defendant Deccan Foods] and [Defendant] Pola with bakery products bearing Plaintiff's trademark." FAC at ¶ 47. Defendant replies that Plaintiff's allegations do not specify how their business was disrupted and that Plaintiff's FAC does not allege damage due to decreased license fees and market share. Deccan Def. Reply at 6-7.

The FAC does not claim with sufficient specificity that the Deccan Defendants caused Plaintiff to lose license fees and market share.[9] The FAC's allegation that Defendant Ramnani supplied the Deccan Defendants with goods with the Karachi Bakery Mark fails to mention any lost fees or market share. Plaintiff essentially attempts to amend its FAC with information in its opposition brief, but the Court cannot consider these new allegations. *Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007) (finding that the court does "not consider after-the-fact allegations in determining the sufficiency of her complaint under Rules 9(b) and 12(b)(6)"); *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (noting that it is well-established that "the complaint may not be amended by the briefs in opposition to a motion to dismiss") (internal citation and quotation omitted). Therefore Count IV is dismissed without prejudice.[10]

---

[9] Plaintiff cites three cases in which former franchisees continued to use a franchisor's trademark in support of its contention that unpaid licensing fees and lost sales are non-speculative damages. Pl. Opp. at 18. The Court need not decide how these cases may apply to the facts in this case because Plaintiff's FAC does not include a sufficient basis for its claims to damages based on lost license fees and market share.

[10] Because the Court finds that the argument concerning the specificity of damages to be dispositive, the Court does not reach the Deccan Defendants' remaining argument that Plaintiff fails to sufficiently plead that its damages were proximately caused by the Deccan Defendants' fraudulent registration of the Karachi Bakery Mark, Deccan Def. Br. at 17-18.

**b. Count V**

Count V seeks attorneys' fees under Section 35 of the Lanham Act (15 U.S.C.A. § 1117(a))[11] based on the Deccan Defendants' alleged "bad faith, fraud and malice." FAC at ¶¶ 94-100. The Deccan Defendants argue that Plaintiff's claim should be dismissed because Plaintiff's claim for attorneys' fees is a remedy and not an independent cause of action. Deccan Def. Br. at 18. The Deccan Defendants also argue that Plaintiff fails to allege any statutory basis for the remedy of attorneys' fees because the FAC alleges that the Deccan Defendants are selling genuine goods with an authentic trademark and therefore the Lanham Act does not apply. Deccan Def. Br. at 18-19.

Section 35 of the Lanham Act provides for attorneys' fees in "exceptional cases." However, the Court finds no authority supporting an independent cause of action for attorneys' fees. In fact, the Third Circuit has held that "a district court may find a case 'exceptional,' and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014)). Because attorneys'

---

[11] Section 35 of the Lanham Act (15 U.S.C. § 1117(a)) provides, in relevant part:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. . . . *The court in exceptional cases may award reasonable attorney fees to the prevailing party.* (Emphasis added).

fees are simply a remedy[12] and not an independent cause of action under Section 35, Count V is dismissed without prejudice. Plaintiff may amend its complaint and request attorneys' fees as a remedy.

### c. Count VI

Count VI seeks a declaratory judgment that the assignment of the registered trademark is invalid for lack of goodwill. FAC at ¶¶ 101-106. The Deccan Defendants argue that Count VI should be dismissed because Plaintiff's FAC fails to allege the necessary elements regarding the anti-assignment-in-gross rule. Deccan Def. Br. at 20-22.

"A trademark symbolizes the public's confidence or 'goodwill' in a particular product. However, it is no more than that, and is insignificant if separated from that confidence." *Premier Dental Prod. Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 853 (3d Cir. 1986). "Because a trademark is symbolic, it may be transferred or assigned only to represent the transfer of goodwill connected with a particular business . . . and cannot be transferred separately from the goodwill of the business." *Id.* (internal citations omitted). "A purported assignment of a trademark without goodwill is an invalid 'assignment in gross.'" *interState Net Bank v. NetB@nk, Inc.*, 348 F. Supp. 2d 340, 349 (D.N.J. 2004) (citing *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir.

---

[12] The legislative history of the Lanham Act further demonstrates that Congress intended attorneys' fees to be a remedy. S. Rep No-93-1400, at 2 (1974) explains:

> [The attorney's fee provision] provides that attorney fees may be awarded to the prevailing party in actions under the federal trademark laws, when equitable considerations justify such awards. It would make a *trademark owner's remedy* complete in enforcing his mark against willful infringers, *and would give defendants a remedy* against unfounded suits. (Emphasis added).

*See Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 280–81 (3d Cir. 2000) (examining S. Rep No-93-1400 to determine the meaning and scope of the term "exceptional" in Section 35 of the Lanham Act).

1999)). "'Goodwill' is the advantage obtained from use of a trademark. This includes public confidence in the quality of the product and in the warranties made on behalf of the product, and the 'name recognition' of the product by the public that differentiates that product from others." *Premier Dental Prod. Co.* at 853.

"The mere fact that an agreement purports to assign goodwill along with the trademark is insufficient; courts must look to the 'reality of the transaction' to determine if goodwill has been transferred." *Colonial Elec. & Plumbing Supply of Hammonton, LLC v. Colonial Elec. Supply, Ltd.*, 2007 WL 4571105, at \*6 (D.N.J. Dec. 27, 2007) (citing *interState Net Bank*, 348 F. Supp. 2d at 349). "[A]n assignment without the transfer of physical assets will only be upheld where the assignee 'is producing a product or providing a service which is substantially similar to that of the assignor and where consumers will not be deceived or harmed.'" *interState Net Bank* at 349 (quoting *Pilates, Inc. v. Current Concepts, Inc.*, 120 F. Supp. 2d 286, 311 (S.D.N.Y. 2000)). The purpose of the anti-assignment in gross doctrine is to protect consumers from "[u]se of the mark by the assignee in connection with a different goodwill and different product [] result[ing] in a fraud on the purchasing public who reasonably assume that the mark signifies the same thing, whether used by one person or another." *interState Net Bank* at 349 (quoting *Marshak v. Green*, 746 F.2d 927, 929 (2d Cir.1984)).

Here Plaintiff's FAC alleges that "Defendant Ramnani . . . has no right to sell goods manufactured and/or packaged by Plaintiff or products bearing Plaintiff's 'Karachi Bakery' trademark in the United States," FAC at ¶ 103, and that the transfer of the registered trademark did not transfer goodwill, including "the ability to sell Plaintiff's goods in the United States," FAC at ¶ 104. The conclusory statements included in Plaintiff's FAC do not plausibly state a claim for invalidation of the assignment. "Factual allegations must be enough to raise a right to relief above

21

the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").[13] Plaintiff merely provides the conclusion that because Defendant Ramnani did not have the right to import or distribute Plaintiff's goods therefore the only products he could be selling with the Karachi Bakery Mark are inauthentic products. FAC at ¶ 105. Plaintiff's factual allegations are not plausibly pled. Therefore, Count VI is dismissed without prejudice.

### d. Count VII

Count VII alleges civil conspiracy with an underlying predicate tort of unfair competition. FAC at ¶ 107-130. The Deccan Defendants first argue that Count VII should be dismissed because Plaintiff fails to sufficiently plead the element of special damages. Deccan Def. Br. at 22-23. "In New Jersey, civil conspiracy is a tort comprised of four elements: '(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages.'" *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 390 (D.N.J. 2016)

---

[13] In an earlier conference in this case, Judge Dickson suggested that this issue is appropriate for summary judgment. Yet, Judge Dickson stated that his decision was, in part, based on the fact that "[t]here [were] factual issues here that I wrote down[.]" D.E. 65, MacGregor Decl., Ex. C, Tr. 7-8 (October 1, 2015 Hearing). In deciding a motion to dismiss, this Court must examine only the allegations in the FAC. Based on the FAC, Plaintiff has not plausibly plead its allegations that the assignment was not in gross. For the same reasons, the Court does not consider the Deccan Defendants argument that Ramnani has the authority to export Karachi Bakery goods into the United States. However, if the Deccan Defendants are correct, then it appears that they have a defense to the allegation because the products in question, Karachi Bakery goods, are precisely the same.

(quoting *Morganroth & Morganroth v. Norris, McLaughlin & Marcus*, 331 F.3d 406, 414 (3d Cir.2003)); *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (N.J. 2005). "In addition, one of the parties must commit some act that is itself a tort in pursuance of the agreement. Mere agreement to do an act can never alone amount to a tort." *Delzotti v. Morris*, 2015 WL 5306215, at *7 (D.N.J. Sept. 10, 2015) (internal citations and quotations omitted).

The fourth element of civil conspiracy is special damages. "Special, as contradistinguished from general damage, is that which is the natural, but not the necessary, consequence of the act complained of." *Delzotti v. Morris*, 2015 WL 5306215, at *8 (D.N.J. Sept. 10, 2015) (citation omitted); *see Neal v. Honeywell, Inc.*, 191 F.3d 827, 832 (7th Cir. 1999) ("The usual consequences of a wrong are 'general' damages, and unusual consequences are 'special.'"). Unlike general damages, special damages must be specifically pled under Rule 9(g). Fed. R. Civ. P. 9 ("If an item of special damage is claimed, it must be specifically stated."). "The purpose underlying Rule 9(g) is to give notice to the other side of those 'special' damages claimed." *Delzotti*, at *8. (internal quotation and citation omitted).

Here, the FAC fails to identify any special damages. Plaintiff only claims that "Defendants conspired to deprive Plaintiff of its exclusive rights" to the Karachi Bakery mark and to exclude Plaintiff from the United States market. The FAC does not plead special damages, much less assert them with the specificity required by Rule 9(g). *See Delzotti*, 2015 WL 5306215, at *8 (dismissing civil conspiracy claim when Plaintiff fails to "identity additional special damages resulting from Defendants' conduct"); *Tiburon Lockers, Inc. v. Fletcher*, 2016 WL 4487852, at *5 (D.N.J. Aug. 24, 2016) (holding that "[b]ecause the Amended Complaint identifies no special damages resulting from Defendants' alleged conduct, Count IX fails to state a claim for relief"); *cf. John Wiley & Sons, Inc. v. Rivadeneyra*, 179 F. Supp. 3d 407, 412 (D.N.J. 2016) (finding that

23

"lost profits" damages fulfilled the "special damages" element of civil conspiracy); *Galicki v. New Jersey*, 2016 WL 4950995, at \*19 (D.N.J. Sept. 15, 2016), *reconsideration denied*, 2016 WL 7494257 (D.N.J. Dec. 1, 2016) (finding special damages were pled in accordance with Rule 9(g) when plaintiffs' allegations were "including but not limited to loss of time, gas, and wages that cannot be reclaimed, other economic losses such as payment of tolls under false pretenses, to be falsely imprisoned and/or restrained in their vehicles, and to suffer emotional damages"). Therefore, Count VII is dismissed without prejudice.[14]

## VI. CONCLUSION

Defendants' motion to dismiss Counts I, II, and III is **DENIED** and Defendants' motion to dismiss Counts IV, V, VI, and VII are **GRANTED**. Counts IV, V, VI, and VII are dismissed without prejudice to allow Plaintiff an opportunity to file a second amended complaint. Plaintiff has thirty (30) days to file another amended complaint, if it so chooses, consistent with this Opinion. If Plaintiff fails to file a second amended complaint, the dismissal will be with prejudice. An appropriate Order accompanies this opinion.

Dated: October 31, 2017

John Michael Vazquez, U.S.D.J.

---

[14] Because the Court agrees with the Deccan Defendants' special damages argument, it does not reach their alternate grounds for dismissal. Specifically Deccan Defendants argue fraudulent procurement of a registration does not state a cognizable claim for unfair competition. Deccan Def. Br. at 24. Plaintiff responds and cites cases discussing the broad scope of unfair competition under New Jersey law. The Court notes, however, that Plaintiff fails to cite any analogous cases that would support applying New Jersey's unfair competition law to the allegations here.

24